1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:22-cr-00212-TL |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS INDICTMENT |
| ROBBY LEE ROBINSON, | |
| Defendant. | |

This matter comes before the Court on Defendant Robby Lee Robinson's Motion to

Dismiss Indictment (Dkt. No. 42) as a violation of his rights under the Second Amendment to the

United States Constitution. Having reviewed the Government's response (Dkt. No. 53),

Mr. Robinson's reply (Dkt. No. 55), and the relevant record, the Court DENIES the motion.

## I.    BACKGROUND

Mr. Robinson is charged by a second superseding indictment with one count of Unlawful

Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g)(1). Dkt. No. 60

at 1–2. The indictment alleges that on or about November 8, 2022, Mr. Robinson possessed two

revolvers, several rounds of live ammunition, and several fired cartridge casings while knowing

that he was convicted of two prior felony crimes, those being: (1) Unlawful Possession of a

Firearm, on or about April 8, 2016, in this District; and (2) Assault in the Second Degree, on or

about November 8, 2008, in Pierce County Superior Court in Tacoma, Washington. Dkt. No. 60

at 1–2. The firearms and ammunition were recovered after a reported car chase in which shots

were allegedly fired by Mr. Robinson. *See* Dkt. No. 53 at 3–4. The prior firearm conviction arose

out of an alleged assault by Mr. Robinson on his girlfriend's mother and 15-year-old son. *See id.*

at 4–5. The prior assault conviction arose out of an argument between Mr. Robinson and another

man that turned physical. *See id.* at 4.

Mr. Robinson now moves to dismiss the indictment. *See* Dkt. Nos. 42, 55. The

Government opposes. *See* Dkt. No. 53.

## II.   LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can

determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The Court may resolve a

motion to dismiss an indictment before trial "if it involves questions of law rather than fact."

*United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

## III.   DISCUSSION

Section 922(g)(1) states:

> It shall be unlawful for any person . . . who has been convicted in
> any court of, a crime punishable by imprisonment for a term
> exceeding one year . . . to ship or transport in interstate or foreign
> commerce, or possess in or affecting commerce, any firearm or
> ammunition; or to receive any firearm or ammunition which has
> been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Mr. Robinson argues that § 922(g)(1) "violates his rights under the

Second Amendment to the United States Constitution, both facially and as applied here." Dkt.

No. 42 at 1. Specifically, he argues that the statute is unconstitutional under the test set forth in the United States Supreme Court's recent decision in *New York State Rifle & Pistol Assn. v. Bruen*, 142 S. Ct. 2111 (2022). Dkt. No. 42 at 2–9; *see also* Dkt. No. 55 at 2–7. In opposition, the Government argues that Mr. Robinson's argument is precluded in this Circuit by precedent, most notably *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010). Dkt. No. 53 at 7–13. The Government also argues that § 922(g)(1) survives the *Bruen* test. *Id.* at 13–29. For the reasons explained below, the Court finds that *Vongxay* remains good law after *Bruen* and thus is fatal to Mr. Robinson's motion.

**A.    Second Amendment Jurisprudence Prior to *Bruen***

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

In 2008, the Supreme Court held for the first time, "on the basis of both text and history," that the Second Amendment protects an individual right to keep and bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). The Supreme Court made clear, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. Most relevant to the instant motion, the Supreme Court stated:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment**, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* (emphasis added). The Supreme Court further noted that "these presumptively lawful regulatory measures" were only examples and not an exhaustive list. *Id.* at 626 n.26. "[T]here will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Id.* at 635.

In February 2010, the Ninth Circuit in *Vongxay* considered a Second Amendment challenge to a conviction under § 922(g)(1). The court declared that "[n]othing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1)." *Vongxay*, 594 F.3d at 1114. Quoting the language above from *Heller*, the court concluded that "felons are categorically different from the individuals who have a fundamental right to bear arms." *Id.* at 1115. The court also squarely rejected Mr. Vongxay's argument that *Heller*'s language about firearm-possession bans for persons convicted of a felony crime were non-binding dicta: "We disagree. Courts often limit the scope of their holdings *and such limitations* are integral to those holdings." *Id.* (emphasis added); *accord United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) ("We do not treat considered dicta from the Supreme Court lightly. Rather, we accord it appropriate deference."). The court leaned on prior precedent, as well as the Second Amendment's text and history, to confirm its holding.[1] *Id.* at 1116–18.

In June 2010, the Supreme Court held that the Second Amendment right, elucidated in *Heller*, is incorporated against the States. *See McDonald v. City of Chicago¸* 561 U.S. 742, 750 (2010). In doing so, the Supreme Court recited its comments in *Heller*, 554 U.S. at 626, and stated plainly: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' We repeat those assurances here." *McDonald*, 561 U.S. at 786 (quoting *Heller*, 544 U.S. at 626-627). "[I]ncorporation does not imperil every law regulating firearms." *Id.*

---

[1] The court summarized its holding as the following: "§ 922(g)(1) does not violate the Second Amendment *as it applies* to Vongxay, a convicted felon." *Vongxay*, 594 F.3d at 1118 (emphasis added). But despite the court's use of as-applied language, the court's *reasoning* does not rest on any facts unique to Mr. Vongxay's case, such as the non-violent nature of his predicate convictions.

Following *McDonald*, the Ninth Circuit addressed the constitutionality of § 922(g)(1) on two more occasions. In *Van Der Hule v. Holder*, a person convicted of a felony challenged federal and state laws depriving him of his right to purchase a firearm as a violation of his Second Amendment right. 759 F.3d 1043, 1045 (9th Cir. 2014). In reviewing its holding in *Vongxay,* the court concluded that "[w]e see no reason to change our view now." *Id.* at 1051. Then in *United States v. Phillips*, the court analyzed whether a prior non-violent felony could constitutionally serve as a predicate for a § 922(g)(1) conviction. 827 F.3d 1161 (9th Cir. 2016).[2] It undertook a longer review of *Vongxay* but still refused to change course. *Id.* at 1173–76. The court concluded that *Vongxay* "forecloses" the constitutional challenge presented there and "presumed the propriety of felon firearm bans—as we must under Supreme Court precedent and our own." *Id.* at 1174–75. Notably, the court squarely rejected Mr. Phillips's argument that *Vongxay* was bad law because it relied in part on a pre-*Heller* precedent that did not recognize an individual Second Amendment right. *Id.* at 1174 n.1. It observed that *Vongxay* "acknowledged *Heller*'s holding" notwithstanding the older precedent and undertook its own analysis of the Second Amendment question. *Id.* "If Phillips believes that *Vongxay* is inconsistent with *Heller*," the court instructed, "his remedy in this court is to seek rehearing en banc." *Id.*

**B.** ***Bruen* and the Ninth Circuit's Application of the Decision**

In 2022, the Supreme Court revisited the Second Amendment right for the third time in 14 years. The *Bruen* Court squarely rejected the kinds of tests developed by the courts of appeal

---

[2] The Court is unaware of any binding authority that makes any distinction between non-violent and violent felony offenses, as Mr. Robinson seeks to do. *See* Dkt. No. 42 at 8–9. On the contrary, the Ninth Circuit has held that "'felons are categorically different from the individuals who have a fundamental right to bear arms,' and we accordingly upheld 18 U.S.C. § 922(g)(1) against a Second Amendment challenge." *Phillips*, 827 F.3d at 1174 (quoting *Vongxay*, 594 F.3d at 1115). The Court also notes that in *Phillips*, the Ninth Circuit questioned "the constitutional correctness of categorical, *lifetime* bans on firearm possession by all 'felons.'" *Id.* (emphasis added). Here, too, Mr. Robinson questions the "forever" nature of the prohibition. *See* Dkt. No. 42 at 6–7. But as the Court is bound by *Vongxay*, the Court need not address these distinctions.

to adjudicate conflicts over Second Amendment rights, in which historical analysis was

combined with "means-end" scrutiny. 142 S. Ct. at 2126–27. *See also, e.g.*, *Young v. Hawaii*,

992 F.3d 765, 783–84 (9th Cir. 2021) (en banc), *vacated and remanded*, 142 S. Ct. 2895 (2022).

In their place, the Supreme Court articulated a new test:

> In keeping with *Heller*, we hold that when the Second
> Amendment's plain text covers an individual's conduct, the
> Constitution presumptively protects that conduct. To justify its
> regulation, the government may not simply posit that the regulation
> promotes an important interest. Rather, the government must
> demonstrate that the regulation is consistent with this Nation's
> historical tradition of firearm regulation. Only if a firearm
> regulation is consistent with this Nation's historical tradition may a
> court conclude that the individual's conduct falls outside the
> Second Amendment's 'unqualified command.'

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

　　　　*Bruen* does not explicitly address the propriety of firearm-possession bans for persons

previously convicted of a felony crime; however, it refers to those falling under the protection of

the Second Amendment as "law abiding" people (or the equivalent) twenty-four times, with over

half of those references appearing in the main opinion. *See, e.g.*, *id.* at 2125 (describing

petitioners as "law-abiding, adult citizens"); *id.* at 2133 (describing relevant historical metrics as

"how and why the regulations burden a law-abiding citizen's right to armed self-defense"); *id.* at

2159 (Alito, J., concurring) ("All that we decide in this case is that the Second Amendment

protects the right of law-abiding people to carry a gun outside the home for self-defense . . . .");

*see also United States v. Ramos*, No. CR21-395, 2022 WL 17491967, at *3 (C.D. Cal. Aug. 5,

2022) ("[*Bruen*] describe[es] those who fall under the [Second] Amendment's aegis as 'law-

abiding' citizens no fewer than twenty-one times."). The opinion also states that "nothing in our

analysis should be interpreted to suggest the unconstitutionality" of licensing regimes that

"ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'" *Bruen*, 142 S. Ct. at 2138 n.9 (quoting *Heller*, 554 U.S. at 635).

In addition, at least six Justices (five of whom still sit on the Supreme Court) *did* specifically comment as authors or signatories of separate writings on the issue of firearm-possession bans for persons previously convicted of a felony crime. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns." (citation omitted)); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("[A]s *Heller* and *McDonald* established and the Court today again explains, the Second Amendment is 'neither a regulatory straightjacket nor a regulatory blank check.' . . . 'Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'" (quoting *Heller*, 554 U.S. at 626)); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, J.J.) ("Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt" on *Heller*'s comments on felon-in-possession bans).

Since then, the Ninth Circuit has directly applied *Bruen* in two decisions. In *United States v. Alaniz*, the court rejected a *Bruen* challenge to a sentencing enhancement for possession of a dangerous weapon at the time of a felony drug offense. 69 F.4th 1124 (9th Cir. 2023). Assuming without deciding that the defendant's conduct was covered by the Second Amendment, the court held that the enhancement "clearly comports with a history and tradition of regulating the possession of firearms during the commission of felonies involving a risk of violence." *Alaniz*, 69 F.4th at 1129. "The historical record assures us that the two-level enhancement here is of a kind that the Founders would have tolerated." *Id.* at 1130. More recently, in *Teter v. Lopez*, the

court applied both steps of the *Bruen* test to strike down Hawaii's ban on the possession of so-called "butterfly knives."[3] No. 20-15948, 2023 WL 5008203 (9th Cir. Aug. 7, 2023).

To the best of the Court's knowledge, no court in the Ninth Circuit has ruled that § 922(g)(1) violates the Second Amendment. On the contrary, numerous district courts have held that *Vongxay* remains good law and forecloses that argument.[4] At least one court has gone further to hold that § 922(g)(1) survives a *Bruen* challenge as applied to persons with non-violent felony convictions, and other courts have suggested they would uphold the statute even under a fresh historical analysis.[5]

## C. Reconciling *Vongxay* and *Bruen*

As a general rule, this Court is bound by the prior decisions of this Circuit. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). But where an "intervening higher authority"—like a Supreme Court decision—has "undercut the theory or reasoning underlying [a] prior circuit precedent in such a way that the cases are clearly irreconcilable," the Court "should consider [itself] bound" by that authority and the prior precedent "effectively overruled." *Miller*

---

[3] The court did not address "the question whether criminals are included among 'the people' referenced [in] the Second Amendment's text." *Teter*, 2023 WL 5008203, at *9 n.9.

[4] *See, e.g.*, *United States v. Saba*, No. CR22-248, 2023 WL 5333255 (D. Idaho Aug. 17, 2023); *United States v. Pineda*, No. CR21-482, 2023 WL 4053583 (D. Or. Jun. 16, 2023); *United States v. Buffalo Bulltail*, No. CR22-86, 2023 WL 3947823 (D. Mont. Jun. 12, 2023); *United States v. Sais*, No. CR-22-2456, 2023 WL 3510406 (S.D. Cal. May 17, 2023); *United States v. Chatman*, No. CR22-453, 2023 WL 3509699 (N.D. Cal. May 16, 2023); *United States v. Villalobos*, No. CR19-40, 2023 WL 3044770 (D. Idaho Apr. 21, 2023); *Walker v. Bonta*, No. C20-31, 2023 WL 2815356 (S.D. Cal. Apr. 6, 2023); *United States v. Guthery*, No. CR22-173, 2023 WL 2696824 (E.D. Cal. Mar. 29, 2023); *United States v. Kilgore*, No. CR21-277, 2023 WL 2505012 (E.D. Cal. Mar. 14, 2023); *United States v. Davis*, No. CR21-206, 2023 WL 2505039 (E.D. Cal. Mar. 14, 2023); *United States v. Jackson*, No. CR22-37, 2023 WL 1967199 (W.D. Wash. Feb. 13, 2023); *United States v. Serrano*, No. CR21-1590, 2023 WL 2297447 (S.D. Cal. Jan. 17, 2023); *United States v. Moore*, No. CR20-474, 2023 WL 154588 (D. Or. Jan. 11, 2023); *United States v. Butts*, 637 F. Supp. 3d 1134 (D. Mont. 2022); *United States v. Delpriore*, 634 F. Supp. 3d 654 (D. Alaska 2022); *United States v. Siddoway*, No. CR21-205, 2022 WL 4482739 (D. Idaho Sept. 27, 2022); *United States v. Perez*, No. CR21-508, 2022 WL 17484969 (S.D. Cal. Sep. 26, 2022); *United States v. Hill*, 629 F. Supp. 3d 1027 (S.D. Cal. 2022); *United States v. Nevens*, No. CR19-774, 2022 WL 17492196 (C.D. Cal. Aug. 15, 2022).

[5] *See Ramos*, 2022 WL 17491967, at *5; *see also, e.g.*, *Villalobos*, 2023 WL 3044770, at *11; *Kilgore*, 2023 WL 2505012, at *3; *Hill*, 629 F. Supp. at 1031; *Nevens*, 2022 WL 17492196, at *3.

*v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see also In re Gilman*, 887 F.3d 956, 962 (9th Cir. 2018) (requiring the intervening authority to be "fundamentally inconsistent" with prior precedent). "[T]he clearly irreconcilable requirement is a high standard." *Avilez v. Garland*, 69 F.4th 525, 533 (9th Cir. 2023) (internal quotation marks omitted) (quoting *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019)). "It is not enough for there to be 'some tension' between the cases or for the intervening authority to 'cast doubt' on this Court's prior authority." *Tingley v. Ferguson*, 47 F.4th 1055, 1075 (9th Cir. 2022) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)). "[I]f we can apply our precedent consistently with that of the higher authority, we must do so." *Avilez*, 69 F.4th at 533 (quoting *FTC*, 926 F.3d at 1213).

Here, then, the Court is presented with a supposed conflict: Does *Bruen*'s text-and-history test abrogate *Vongxay* to such a degree that *Vongxay* is "clearly irreconcilable" with *Bruen* and no longer good law? The Court finds that it does not.

There is undoubtedly "some tension" between *Vongxay* and *Bruen*: The Ninth Circuit did not engage in the core historical analysis that *Bruen* requires. *See Bruen*, 142 S. Ct. at 2131–34 (describing how to conduct the historical inquiry). *Vongxay* itself acknowledged that "the historical question has not been definitively resolved." 594 F.3d at 1118; *accord Phillips*, 827 F.3d at 1174 (observing "good reasons to be skeptical of the constitutional correctness of categorical, lifetime bans on firearm possession by *all* 'felons.'" (emphasis in original)). The outcome of such an analysis is not preordained. *Compare Range v. Att'y Gen. U.S. of Am.*, 69 F.4th 96, 103–06 (3d Cir. 2023) (en banc) (finding no historical basis for § 922(g)(1) as applied) *with United States v. Jackson*, 69 F.4th 495, 502–05 (8th Cir. 2023) (reaching the opposite conclusion), *reh'g denied*, No. 22-2870 (Aug. 30, 2023); *see also Kanter v. Barr*, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting) ("The constitutionality of felon dispossession was not before the Court in *Heller*, and because it explicitly deferred analysis of this issue, the scope of

its assertion is unclear."); *Range*, 69 F.4th at 112–13 (Ambro, J., concurring) ("[T]he Supreme Court will have to square its history-driven test with its concurrent view that felon gun restrictions are presumptively lawful.").

But "that limited tension between *Vongxay* and *Bruen* is not enough to find that *Bruen* effectively overruled *Vongxay*." *Jackson*, 2023 WL 1967199, at *4 (internal quotation marks omitted) (quoting *Siddoway*, 2022 WL 4482739, at *2). *Vongxay* did not apply the kind of means-end scrutiny that *Bruen* explicitly rejected. Instead, it began with *Heller*'s finding of an individual Second Amendment right and took its cues from that decision. *Vongxay*, 594 F.3d at 1114–15. It looked at the text of the Second Amendment. *Id.* at 1117. It considered historical understanding. *Id.* at 1118. In other words, it previewed *Bruen*'s text-and-history test, albeit not with the same depth of treatment. Thus, its methods of reasoning demonstrate a compatibility with *Bruen*, not a fundamental inconsistency. Its conclusion is bolstered by the Supreme Court's own repeated assurances that firearm-possession bans for persons convicted of a felony crime are constitutional.[6] *See Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786. Its conclusion is further bolstered by the Supreme Court's two-dozen reminders in *Bruen* that the Second Amendment applies to law-abiding citizens, reminders that include this statement in the conclusion of the opinion: New York's law "violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." 142 S. Ct. at 2156 (emphasis added). Finally, the Ninth Circuit's initial foray into applying *Bruen* in the firearm context suggests the Circuit's likely agreement. *See Alaniz*, 69 F.4th

---

[6] Mr. Robinson argues that "*Bruen*'s treatment of concealed carry confirms that – contrary to the Ninth Circuit's approach – *Heller*'s preliminary conclusions are subject to testing and revision." Dkt. No. 55 at 5. But as *Jackson* elucidates, concealed carry was *not* part of the list of "presumptively lawful regulatory measures" identified by *Heller*. 2023 WL 1967199, at *4. And *Bruen* discussed approvingly "sensitive places" regulations, which *were* part of that list. *Id.* (citing *Bruen*, 142 S. Ct. at 2133–34).

at 1129. Therefore, *Vongxay* remains good law, this Court is bound by it, and the motion must be denied.[7]

### IV.   CONCLUSION

Accordingly, the Court DENIES Mr. Robinson's Motion to Dismiss Indictment (Dkt. No. 42).

Dated this 31st day of August 2023.

Tana Lin
United States District Judge

---

[7] The Court thus need not reach the Parties' arguments regarding application of the *Bruen* test.