1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

UNITED STATES OF AMERICA,

CASE NO. 2:22-cr-00212-TL

12

Plaintiff,

ORDER ON MOTION

v.

TO PRECLUDE A

13

ROBBY LEE ROBINSON,

JUSTIFICATION DEFENSE

14

Defendant.

15
16
17      This matter is before the Court on the Government's Motion to Preclude a Justification

18  Defense (Dkt. No. 39). Having reviewed Mr. Robinson's responses (Dkt. Nos. 50, 58), the

19  Government's reply (Dkt. No. 59), and the relevant record, the Court DENIES the motion.

20                          I.      BACKGROUND

21      Mr. Robinson is charged by superseding indictment with one count of Unlawful

22  Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. No. 60

23  (second superseding indictment). The Government has filed this pre-trial motion to preclude all

24

evidence and jury instructions in support of a justification defense. Dkt. No. 39; *see also* Dkt. No. 59 (reply). Mr. Robinson opposes. Dkt. Nos. 50, 58.

## II.    LEGAL STANDARD

"A defendant is entitled to have the jury instructed on his or her theory of defense, as long as that theory has support in the law and some foundation in the evidence." *United States v. Perdomo-Espana*, 522 F.3d 983, 986–87 (9th Cir. 2008). "However, where the evidence, even if believed, does not establish all of the elements of a defense, . . . the trial judge need not submit the defense to the jury." *Perdomo-Espana*, 522 F.3d at 987 (quoting *United States v. Arellano-Rivera*, 244 F.3d 1119, 1125 (9th Cir. 2001) (internal quotation marks and alteration omitted)).

Justification is a possible defense to a charge under § 922(g)(1), known as the "felon in possession" statute. *See United States v. Gomez*, 92 F.3d 770, 775 (9th Cir. 1996). *But see United States v. Wofford*, 122 F.3d 787, 791 (9th Cir. 1997) ("*Gomez* is limited to extraordinary cases."). A defendant bears the burden of proving, by a preponderance of the evidence, each of the following elements:

> (1)    he was under unlawful and present threat of death or serious bodily injury;
>
> (2)    he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
>
> (3)    he had no reasonable legal alternative; and
>
> (4)    there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Gomez*, 92 F.3d at 775 (quoting *United States v. Lemon*, 824 F.2d 763, 765 (9th Cir. 1987)); *see also* Ninth Cir. Model Jury Instruction 5.9 (Justification (Legal Excuse)); *United States v. Beasley*, 346 F.3d 930, 935 (9th Cir. 2003) (holding that defendant has the burden of proof).

A defendant may not present a justification defense to the jury unless they make a *prima facie* showing of evidence to support the defense. *See Perdomo-Espana*, 522 F.3d at 989 ("A trial judge may decline to allow evidence of a necessity defense where the defendant fails to present a prima facie case."); *accord United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008) (discussing the closely related duress defense and holding that a defendant must make "a prima facie showing . . . in a pre-trial offer of proof"). A "mere scintilla" of evidence is insufficient. *Wofford*, 122 F.3d at 789 (quoting *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993)). In assessing the sufficiency of proof, the Court views the evidence in the light most favorable to the defendant. *Gomez*, 92 F.3d at 775; *see also United States v. Lopez*, 885 F.2d 1428, 1432 n.5 (9th Cir. 1989), *overruled on other grounds by Schmuck v. United States*, 489 U.S. 705 (1989) ("[It] is well established that a criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." (alteration in original) (quoting *United Sates v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir. 1988))).

### III.    DISCUSSION

The Government seeks an order "exclud[ing] from trial all evidence that would be offered solely in support of a justification defense" and requests that no jury instruction be given on such a defense. Dkt. No. 39 at 13. The Government argues that "the facts in this case do not support a *prima facie* showing of a justification defense." *Id.* at 2; *see also* Dkt. No. 59. Mr. Robinson opposes, arguing that he has made that showing. Dkt. No. 50 at 1; *see also* Dkt. No. 58. To that end, Mr. Robinson has made a pre-trial offer of proof that includes testimony as well as photographs and video depictions of the scene and the automobiles involved. *See* Dkt. No. 50 at 2–4; Dkt. No. 58 at 1–3.

1    Here, the Court finds that Mr. Robinson has made a *prima facie* showing of justification.

2  First, a jury could find that Mr. Robinson presents "a plausible case that he thought himself in

3  danger." *Gomez*, 92 F.3d at 776. Mr. Robinson proffers that he saw another vehicle "start[ ] to

4  chase him." Dkt. No. 50 at 2; *see* Dkt. No. 59, Exs. 1–3 (D.W. dashboard video clips).[1] The

5  vehicle eventually "hit his car on the rear driver's side." Dkt. No. 50 at 3. In speaking with police

6  on the night of the incident, Mr. Robinson stated that "All's I know is that someone in a silver

7  sedan tried to pit me on the driver's side, and then tried to pit me or did pit me on the passenger's

8  side. I spun out all of the way around twice and I couldn't keep up with him." Dkt. No. 39-7

9  (transcript of statement) at 36 (35:20–24). Mr. Robinson proffers that he "believed that the other

10  driver was attempting to run him off the road and cause him serious bodily injury."[2] Dkt. No. 50

11  at 3. Further, D.W.'s dashboard video shows Mr. Robinson signaling to enter the left lane at

12  about the same time D.W. moves into the left lane, D.W. moving into the left lane and further

13  into oncoming traffic but then moving back over, and the cars briefly colliding (on Mr.

14  Robinson's driver side and D.W.'s passenger side). Dkt. No. 39-1 (video ending 370) at

15  22:24:54–22:25:00. While Mr. Robinson's car is not seen spinning out in any of the videos,[3] Mr.

16

17  _____

18  [1] Mr. Robinson also claims that D.W. used "reckless maneuvers to close the distance" and was "accelerating and weaving." Dkt. No. 50 at 2. The video does not appear to show any obviously reckless maneuvers or weaving. However, the Court cannot determine from the video how fast the cars were driving, which could have made the driving by one or both drivers reckless.

19
20  [2] Mr. Robinson also claims that his perceptions were "distorted by the stress of the incident and his psychological challenges." Dkt. No. 50 at 3. The Ninth Circuit has not squarely held that a justification defense must be viewed from an objective perspective, though it has hinted as much. *See Perdomo-Espana*, 522 F.3d at 988 ("Embedded in

21  our recognition that a person who seeks to benefit from a justification defense must act reasonably is the principle that justification defense must necessarily be analyzed objectively."). *But see United States v. Barnes*, 895 F.3d

22  1194, 1204 n.4 (9th Cir. 2018) ("We have, however, tended to treat necessity and justification as separate and distinct defenses in felon-in-possession cases."). Regardless, the Court finds that there is sufficient evidence to support a justification defense in this matter, whether viewed objectively or subjectively.

23  [3] Mr. Robinson also claims that D.W. "drove him into a guard rail." Dkt. No. 50 at 3. However, the video appears to show that immediately after the collision, Mr. Robinson's vehicle was never close to the guard rail and was able to

24  drive ahead of D.W. *See* Dkt. No. 59, Ex. 4, at 22:24:59–22:25:03.

1    Robinson provides photos of his car taken on the night of the incident by his wife showing

2    damage to the passenger side of the car. Dkt. No. 58 at 2–3.

3          The Government argues that the video shows "D.W. did not chase [Mr.] Robinson or take

4    any steps to attack or threaten him." Dkt. No. 39 at 11; *see also* Dkt. No. 59 at 2 ("[T]he

5    sequence of events that resulted in the collision was not initiated by DW."). While a jury may

6    credit this interpretation of the facts, the Court cannot determine, as a matter of law, that Mr.

7    Robinson was not being chased and was not under threat of serious bodily injury when he

8    collided with another vehicle that continued to drive behind him. The Government also argues

9    that Mr. Robinson's statement to police contradicts the evidence he now proffers. *See* Dkt.

10   No. 39 at 11; Dkt. No. 39-7. Some of the evidence does appear to contradict some of the facts in

11   Mr. Robinson's version of events. But Mr. Robinson is entitled to present a defense if it is

12   supported by law and fact, "even though the evidence may be weak, insufficient, *inconsistent*, or

13   of doubtful credibility." *Lopez*, 885 F.2d at 1432 n.5 (emphasis added).

14         Second, a jury could find that Mr. Robinson did not recklessly place himself in the

15   situation. Mr. Robinson proffers, and the video shows, that he was simply driving on Washington

16   Highway 18 when the collision with D.W. occurred. Dkt. No. 50 at 2; *see generally* Dkt. No. 59,

17   Exs. 1–4. Mr. Robinson proffers that he was driving to the place where he and his wife worked,

18   he did not know the other driver, and he had no warning of any attack. Dkt. No. 50 at 6.

19   Following the collision, Mr. Robinson pulled ahead of D.W., but D.W. continued to drive behind

20   him until Mr. Robinson slowed down, the two vehicles drew closer, and Mr. Robinson fired

21   shots. Dkt. No. 39-1 (video ending 370) at 22:24:59–22:25:27. The Government argues that Mr.

22   Robinson "was able to remove himself from any potential perceived harm" by driving ahead of

23   D.W. Dkt. No. 39 at 11. While a jury may credit this interpretation of the facts, the Court cannot

24

ORDER ON MOTION
TO PRECLUDE A
JUSTIFICATION DEFENSE - 5

determine, as a matter of law, that Mr. Robinson was removed from any harm while D.W. was still visibly behind him.

Third, a jury could find that Mr. Robinson had no reasonable legal alternative to possessing the firearms. *See Lemon*, 824 F.2d at 765 (holding that defendant "must show that he actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternatives" (quoting *United States v. Harper*, 802 F.2d 115, 118 (5th Cir. 1986))). The video does not show any nearby highway exits or, indeed, any other signage indicating any way for Mr. Robinson to exit the narrow roadway at the time of the collision and the perceived threat. *See generally* Dkt. No. 39-1 (video ending 370). Mr. Robinson further proffers that his phone was out of power and thus he could not call the police at that time. Dkt. No. 50 at 4; *cf. Wofford*, 122 F.3d at 791 ("Our cases uniformly require the defendant to seek aid from law enforcement before taking matters into his own hands."). The Government contends that there was a "simple and immediately available alternative to picking up a gun: Robinson could have pulled to the side of the road and waited for D.W. to leave the area."[4] Dkt. No. 39 at 12. But if Mr. Robinson thought himself "under attack," as the Government accepts (*id.*), then pulling to the side of the dark road is not an alternative at all. It is instead an invitation to one's attacker.

Finally, a jury could find a direct causal relationship between Mr. Robinson's criminal conduct and the avoidance of the threatened harm. Mr. Robinson proffers that he "perceived that his alternatives were very limited," either outrunning the car or stopping it in some way, leading to his "impulsive decision" to grab one of the firearms. Dkt. No. 50 at 4. The Government argues

---

[4] The Government also argues that Mr. Robinson "*followed* DW and continued shooting for *several minutes*" after the initial shots. Dkt. No. 59 at 5 (emphases in original); *see also* Dkt. No. 39-2 (911 call recording) at 1:50–1:54, 3:55–4:03, 4:12–4:16. But the accuracy or truth of these facts is for the jury to determine.

that this prong alone should defeat Mr. Robinson's motion because "Robinson was in possession of firearms and ammunition *before* the collision." Dkt. No. 39 at 10 (emphasis in original). But this argument assumes an element of the crime: "knowing possession" of the firearm. *Beasley*, 346 F.3d at 934. The Government contends that Mr. Robinson "knew where the guns were and had access to them" (Dkt. No. 39 at 10), but it proffers no evidence of that knowledge. On the other hand, Mr. Robinson proffers that his wife will testify that she loaned the car to Mr. Robinson, she had stored the firearms and ammunition in the car, and she did not tell Mr. Robinson that the firearms were present. *See* Dkt. No. 50 at 2. Mr. Robinson further proffers that the firearms were not visible to him until after the collision, when they "shifted out from under the passenger seat." *Id.* at 3. Whether this story is credible is for the jury, not the Court, to decide.

## IV. CONCLUSION

Accordingly, the Court DENIES the Government's Motion to Preclude a Justification Defense (Dkt. No. 39). Mr. Robinson is permitted to introduce evidence in support of a justification defense. However, the Court RESERVES decision on jury instructions, pending the presentation of evidence at trial.

Dated this 6th day of September 2023.

Tana Lin
United States District Judge