The Hon. Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBBY LEE ROBINSON,

Defendants.

No. CR22-212TL

**GOVERNMENT'S TRIAL BRIEF**

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Stephen Hobbs and Rachel Yemini, Assistant United States Attorneys, respectfully submits this trial brief in the above-captioned case.

## I. INTRODUCTION

Defendant Robby Lee Robinson is charged in the Second Superseding Indictment with the following count under this cause number:

Count 1: *Possession of Firearms or Ammunition by a Felon*, in violation of Title 18, United States Code, Section 922(g)(1).

Trial is scheduled to begin on October 2, 2023. The government expects to call 5 to 9 witnesses and introduce approximately 20 to 40 exhibits. The government anticipates that it can present its case-in-chief in approximately two days, including voir dire, opening



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

statement, and closing argument. However, as previously communicated to the Court, one government witness will not be available until the morning of Wednesday, October 4, 2023. Accordingly, the government expects to rest after the testimony of that witness.

The government is filing this trial memorandum in order to advise the Court and the defense of the scope of the government's case. The government reserves the right to amend any of these pleadings and specifically to call additional witnesses and present additional exhibits at trial.

## II. FACTUAL BACKGROUND

On November 8, 2022, at approximately 10:20 pm, 911 dispatch received a call from David Williams reporting that he was driving on State Route 18 toward Tacoma, he had just gotten into a car accident, and the person with whom he had collided was shooting at him. Williams said he had bullet holes in his car and was driving about 100 miles per hour to get away from the shooter, who was driving a white Chevy Malibu. On the recording, the sounds of a gunshot can be heard, and Williams then said that the shooter was still shooting at him. Williams said he could not identify the driver, glass had shattered in his vehicle, and the shooter had shot at him about five times. After about five minutes, Williams said that the shooter had gotten off the freeway, and Williams then pulled over.

Williams had the equivalent of a dash camera recording from the start of his trip to the end. There is no audio, but the video shows a white Chevy Malibu passing closely on Williams' left, as the road turns to one lane and Williams continues behind the Malibu for a few minutes. The road splits into two lanes, and shortly thereafter, Williams tries to pass the Malibu on the left as the Malibu changes from the right to left lane. Williams continues to try to pass on the left, and the cars collide. Immediately after the collision, the Malibu speeds up ahead of Williams and moves into the right lane, as Williams continues to drive in the left lane. After about 25 seconds, the Malibu slows down, and as Williams passes it, two flashes—gunshots—come from the Malibu's driver-side window. The video then shows Williams driving at high speed for several minutes until finally pulling over.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington State Patrol (WSP) troopers responded to the call by going to Williams, who was stopped on the side of the freeway. They took photographs showing damage to the exterior of his car consistent with the sideswipe, as well as what appeared to be a gunshot that had shattered the rear passenger-side window. Investigators also took photographs of what they believed were bullet fragments. Williams told officers that he had a dashcam, and they retrieved the video. Williams spoke with different officers at the scene, providing a statement largely consistent with the 911 call. Williams also stated that he did not get a good look at the shooter.

While WSP met with Williams, King County Sherriff's (KCSO) deputies responded to the 911 call by going to the exit where the Malibu had exited the freeway. A KCSO deputy was stationed at that exit, and KCSO officers began following the Malibu soon after it left the freeway. Deputies followed the Malibu for a short time and then turned on their lights. The vehicle did not immediately pull over and continued to drive to the Burger King (where Robinson's wife worked). Defendant Robby Lee Robinson then stopped the car and got out of the driver side. He was the only individual in the vehicle. The outside of the vehicle did show marks on the driver side of the vehicle consistent with the description of the accident.

As seen in a recorded video, Robinson was placed in the back seat of a police car and read his *Miranda* warning. Robinson then claimed that he was the victim and had been hit by another car on the freeway. He stated that the car he was driving belonged to his wife, and he denied knowing about a shooting or owning any guns. Robinson said he did not know if his wife owned guns, was not aware of any guns in the car, and was not allowed to talk to his wife about certain things because he was a felon. He admitted knowing about his felony convictions and remembered that AUSA Stephen Hobbs prosecuted him. Robinson said that he drives the car twice a week and had a different car. He also said he was coming from his grandmother's house and spends four to five nights a week there. When asked about the empty shell casings in the cupholder of the car he was driving,


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Robinson denied knowing anything about it and said his brother does a lot of "reloading." Robinson also said that his phone was dead, and he could not call anyone after the car accident.

Investigators impounded Robinson's vehicle and obtained a warrant to search it. Investigators found six empty .357 shell casings in the center console cupholder, four empty .357 shell casings on the front passenger seat, the two handguns described in the indictment under the front passenger seat, and live ammunition under the front passenger seat. In all, investigators found 11 empty .357 shell casings. When investigators found the magnum, it was unholstered and fully loaded. The Taurus .22 was holstered and fully loaded. Investigators also found Robinson's wallet with his identification in the footwell of the front passenger seat, along with a ghost viper optic sight.

ATF agents had the guns and ammunition checked for fingerprints but found no viable prints. An ATF interstate nexus expert also provided a nexus analysis, confirming that the firearms and ammunition were just that and that they were manufactured outside Washington State. A DNA analysis was conducted by the FBI and found a very strong level of support that DNA found on both firearms belonged to Robinson.

The case agent also interviewed Robinson's wife. She claimed that the guns and the car are hers. She said that she keeps the guns under the passenger seat but brings them into the Burger King where she works, though she forgot to do it on the relevant day. She also confirmed that on the day of the shooting, Robinson had dropped her off at work and then driven away in her car. She also explained that at the time of his arrest, Robinson was driving to pick her up from work and was the only person in the car.

## III. ELEMENTS OF THE OFFENSE

Count 1 of the Second Superseding Indictment charges the Defendant with *Possession of a Firearm or Ammunition by a Felon*, in violation of Title 18, United States Code, Section 922(g)(1).



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

To convict the Defendant of this crime, the government must prove that: (1) the Defendant knowingly possessed a firearm or ammunition, (2) the firearm or ammunition had previously been transported in interstate or foreign commerce, and (3) the Defendant had been, and knew he had been, previously convicted of a crime punishable by a term of imprisonment exceeding one year. 9th Cir. Model Jury Instr. No. 14.15.

"A person has possession of something if the person knows of its presence and has physical control of it or knows of its presence and has the power and intention to control it. More than one person can be in possession of something if each knows of its presence and has the power and intention to control it." Model Ninth Circuit Instruction 6.15.

Possession may be personal or shared, *United States v. Smith*, 962 F.2d 923, 929–30 (9th Cir. 1992), and either actual or constructive. *See United States v. Batimana*, 623 F.2d 1366, 1369 (9th Cir. 1980). Actual possession connotes physical custody or actual personal dominion." *Id*. Constructive possession requires that the Defendant both knew of the item's presence and had the power to exercise dominion and control over it. *Id*.; *United States v. Penagos*, 823 F.2d 346, 350–51 (9th Cir. 1987).

## IV. LEGAL AND EVIDENTIARY ISSUES

### A. Witnesses

The government will separately file a list of intended witnesses. The witnesses will not be listed in the order in which the government intends to call them.

### B. Exhibits and Physical Evidence Seized

The government will separately file an amended list of exhibits. The United States will introduce at trial physical evidence seized over the course of the investigation, including two firearms. In the interest of safety, the government will not bring the ammunition found with and in the firearms into the courthouse. The government also intends to offer video and audio recordings.

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C. Admissibility of the Defendant's Own Statements**

The United States intends to introduce recorded statements made by the Defendant after his arrest.

Statements by a defendant are not hearsay when offered by the government against the speaker. Fed. R. Evid. 801(d)(2). The converse, however, is not true. An out-of-court statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay because, among other things, it is not a statement by a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-exculpatory statements because such statements "are exactly the ones which people are most likely to make even when they are false"). The defense has not moved to suppress any of the statements.

The government objects to any attempt by Robinson to introduce his self-exculpatory statements (made on April 30, 2020, after his flight from officers).

**D. Other Out-of-Court Statements**

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The admission of hearsay into evidence is generally proscribed by Rule 802. When it is relevant that an out-of-court statement was made, however, and the statement is offered exclusively to prove that it was made, it is not hearsay and is therefore admissible. *See Anderson v. United States*, 417 U.S. 211, 220 n.8 (1974). That is because statements not offered for their truth are not hearsay. Fed. R. Evid. 801(c).

In certain instances, the government may offer out-of-court statements not to prove the truth of the matters asserted, but merely to explain information possessed by, and the subsequent actions of, the investigative agents, law enforcement officers, and other witnesses. Furthermore, additional out-of-court statements provide necessary context in order to comprehend the admissible statements of the Defendant and others. Because these statements will not be offered for the truth of the matter asserted, the statements would not



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

constitute hearsay as defined by Rule 801(c). *See United States v. Mitchell*, 502 F.3d 931, 969 (9th Cir. 2007) (no error in allowing investigator to testify about out-of-court statements from informant that caused him to go to certain location); *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000) (no error in allowing attorney to testify about out-of-court conversations with Michigan State investigators that caused him to send letter requesting that investment company sales personnel suspend investment sales); *United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991) (out-of-court statement is not hearsay if offered for limited purpose of explaining why police investigation was undertaken).

**E. Recalling Law Enforcement Witnesses and Interrupting Witnesses**

While it does not anticipate having to do so, the government requests leave to re-call law enforcement witnesses during the course of the trial.

**F. Admissibility of Photographs, Video, and Audio**

The government expects to offer a brief video taken from the victim's car and audio recording of the victim's 911 call. The government will introduce photos taken during the search and evidence processing. The government may offer recorded jail calls made by the defendant. These videos, audio recordings, and photos are admissible if they accurately depict the scene or capture the recorded event. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) (evidence that photographs accurately depict scene provides sufficient foundation for admission under FRE 901(a)).

**G. Expert Testimony**

The United States is prepared to call two experts – one related to DNA evidence and the other to the interstate nexus of the firearms and ammunition – and has provided notice to the defense of their identity and the subject matter of their testimony. Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto." Expert testimony must be both (1) relevant, that is, it must have a valid connection to the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pertinent inquiry at trial, and (2) reliable, that is, it must be trustworthy. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Each of the government's proposed expert witnesses are experts in their respective fields, and the government submits that their testimony will meet the reliability requirements set forth in *Daubert*.

**H. Pre-Trial Motions and Rulings.**

The parties have filed, and the Court has ruled upon, several pre-trial motions (other than motions *in limine*, which are discussed below):

The Government filed a motion to preclude justification defense (Dkt. 39). This motion was denied by the Court (Dkt. 86).

The Defendant filed a motion to compel election between counts (Dkt. 46). This motion was stricken as moot by the Court (Dkt. 80).

The Defendant filed a motion to dismiss the charges (Dkt. 42). This motion was denied by the Court (Dkt. 81).

**I. Stipulations**

The parties have agreed to the following stipulation (Dkt. 43):

> Prior to November 8, 2022, Robby Lee Robinson, the defendant herein, had been convicted – and knew he had been convicted – of a crime punishable by a term of imprisonment exceeding one year and thus was a "felon" as that term is defined by federal law.

At this time, there are no other agreed stipulations.

**J. Motions *in Limine***

The parties have agreed to, and the Court has ruled on, a series of motions *in limine*. *See* Exhibit A.

//

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. ASSET FORFEITURE

### A. Property Subject to Forfeiture

The United States intends to seek forfeiture of any firearms, and ammunition seized from Defendant, specifically:

- a Smith & Wesson .357 Magnum caliber revolver;
- a Taurus .22LR caliber revolver;
- Thirteen (13) live rounds of .357 Magnum caliber ammunition with headstamp markings "SIG 357 MAG"; and
- Six (6) live rounds of .22LR caliber ammunition with a headstamp marking "C."

(collectively, the "Subject Property").

The Second Superseding Indictment provided notice of the United States' intent to forfeit the Subject Property. Dkt. No. 60. All of the Subject Property is forfeitable under Title 18, United States Code, Section 924(d)(1), by way of Title 28, United States Code, Section 2461(c), as firearms and ammunition used or involved in Defendant's commission of Unlawful Possession of Firearms and Ammunition (Count 1). The United States expects the evidence will prove the factual nexus between the offense charged in Count 1 of the Second Superseding Indictment and the Subject Property.

### B. Legal Standard for Forfeiture

Criminal forfeiture is a form of punishment that is imposed as part of a criminal sentence. *Libretti v. United States*, 516 U.S. 29, 39–40 (1995). For the government to criminally forfeit property, there must be a predicate criminal conviction, a statute authorizing forfeiture for the crime of conviction, and evidence to support the statutorily required nexus between the property and the crime of conviction. *See e.g., United States v. Garcia-Guizar*, 160 F.3d 511, 518–20 (9th Cir. 1998) (reviewing requirements to establish criminal forfeiture of property). With respect to the required nexus, the government must



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

establish the forfeitability of the relevant property by a *preponderance of the evidence*. *Id.* at 517–18 ("[T]he government need prove by only preponderance of the evidence, and not beyond a reasonable doubt, that property should be criminally forfeited.") (citing *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1576–77 (9th Cir. 1989)). In other words, depending on the relevant forfeiture statute, the government must present evidence that establishes the relevant property is "more likely than not" forfeitable as proceeds of the crime, property involved in the crime, or property used, or intended to be used, to commit or to facilitate the crime. *Id.* at 522 n.9; *see also, e.g.*, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (equating "preponderance" to "more likely than not"). This lower standard of proof "is constitutional because the criminal forfeiture provision does not itself describe a separate offense but is merely an 'additional penalty' for an offense that must be proved beyond a reasonable doubt." *Garcia-Guizar*, 160 F.3d at 518 (citing *Hernandez-Escarsega*, 886 F.2d at 1577).

The relevant statutes provide that forfeiture is a mandatory part of any criminal sentence for violation of the charged offense. Under 18 U.S.C. § 924(d)(1), a defendant must forfeit any firearms or ammunition used or involved in certain firearm possession offenses, including Unlawful Possession of Firearms and Ammunition (Count 1), in violation of 18 U.S.C. § 922(g)(1). Although this statute pertains to civil forfeiture, 28 U.S.C. § 2461(c) extends its applicability to criminal forfeiture.

**C. Forfeiture Process**

Rule 32.2 sets out the procedures for determining the forfeitability of property in a criminal case. Forfeitures are decided after a guilty verdict is returned on a count that supports the forfeiture. *See* Fed. R. Crim. P. 32.2(b)(1)(A). Then, the specific question for the fact finder is "whether the government [has established the] requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). Either party has a right to request the jury determine the forfeitability of specific property, such as firearms, but the party must request that the jury be retained before the jury begins deliberating the



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

underlying offenses. Fed. R. Crim. P. 32.2(b)(5)(A). The United States is willing to waive its right to a jury trial in that proceeding and have the Court decide the forfeitures. If, however, Defendant requests that the jury be retained to determine the forfeitability of the Subject Property, the United States is prepared to present the forfeiture case to the jury. The United States is submitting proposed forfeiture jury instructions and a special forfeiture verdict form to be used as necessary.

As forfeiture is determined post-conviction, and is considered part of sentencing, the rules of evidence do not strictly apply to forfeiture proceedings. *See e.g., United State v. Hatfield*, 795 F. Supp. 2d 219, 229–30 (E.D.N.Y. 2011) (holding neither the Federal Rules of Evidence nor *Daubert* apply to forfeiture hearings); *United States v. Creighton*, 52 Fed. Appx. 31, 35–36 (9th Cir. 2002) ("[H]earsay evidence is permissible at sentencing and does not, per se, lack sufficient indicia of reliability."). The factfinder may consider any evidence that is "relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). This includes any evidence presented by the parties during trial on the substantive criminal offenses. *See id.* ("The court's [or jury's forfeiture] determination may be based on evidence already in the record. . . ."); *see also United States v. Newman*, 659 F.3d 1235, 1244–45 (9th Cir. 2011) (same).

In the forfeiture proceeding, the United States expects to rely primarily on the testimony and other evidence introduced during the guilt/innocence phase of trial. The United States expects testimony and related exhibits presented in its case-in-chief will establish that the Subject Property was involved in the firearm offense set forth in Count 1. The United States expects to present argument with respect to the forfeiture of the Subject Property, but it does not anticipate presenting substantial additional testimony or exhibits. The United States reserves its right, however, to offer additional evidence in support of forfeiture, and to take different positions with respect to forfeiture, as necessary to respond to developments at trial.

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

The government is not aware of other legal issues that are likely to arise during the course of this trial. If other issues do arise, the government will address those issues by way of a supplemental brief.

DATED: September 11th, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Stephen Hobbs*
STEPHEN HOBBS
RACHEL YEMINI
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-4301
Email: stephen.p.hobbs@usdoj.gov